PEOPLES NATIONAL BANK *vs.* ELIZA B. MULHOLLAND & another.

Suffolk.   March 7, 1917. — September 13, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Equity Pleading and Practice*, Recommittal of master's report.   *Trust*, Creation, Commingling of property, Tracing trust property.   *Evidence*, Presumptions and burden of proof.

After the rescript of this court issued in accordance with the decision at an earlier stage of this suit in equity reported in 224 Mass. 448, the Superior Court recommitted the case to the master for the determination of certain material facts in regard to the plaintiff's title to a certain importation of hides, and it here was *held* that the interlocutory degree recommitting the case to the master for this purpose was proper.

Where a bank, as the means of advancing money to a dealer to pay for an importation of hides, purchases the hides in its own name directly from the foreign seller and pays for them, and then, owning the hides, delivers them to the dealer in exchange for a trust receipt in which the dealer declares that he holds the hides "in trust" for the bank as its property with liberty to sell them for the bank's account or to manufacture and remanufacture the hides without cost or expense to the bank, and agrees "to keep said goods, and the manufactured product and proceeds thereof, . . . separate and capable of identification" as the bank's property, with a provision that the bank may at any time cancel the trust and repossess itself of the hides, raw or as manufactured product, a valid trust is created and the dealer holds the hides with the obligations incidental to the fiduciary relation.

In a suit to enforce the trust above described it was *held* that it was the duty of the dealer to keep the hides at all times, both in their raw and their manufactured state, "separate and capable of identification," and that that duty was not performed by having one person alone, who afterwards died, sufficiently familiar with the goods to be able to make a separation, and that, on the death of such person, there was a breach of the duty of the dealer under the trust receipt in having commingled the trust property with other hides so that the possibility of picking out from the mass the property of the bank was gone.

In the same case it was *held* that such commingling was done by the dealer in disregard of its obligation to the bank and was a breach of its fiduciary duty.

In the same case it was *held* that there had been a sufficient tracing of the hides of the bank into the commingled mass to establish a lien for the bank's claim, and, a part of the mass having been sold and a part destroyed by fire, the bank's lien attached to all that remained of the lot.

One, who without justification and in breach of fiduciary obligation has commingled his own property with that of another with which he has been entrusted, must at his peril return to the owner that which thus has been appropriated by him wrongfully and must prove what belongs to him or lose it.

In the case above described it appeared that a separate deposit had been made by the dealer of the proceeds received from sales of a part of the commingled goods to a certain corporation, and it was *held* that this separate deposit stood on the same footing as the unsold part of the commingled goods and was impressed with a like trust for the benefit of the plaintiff.

BILL IN EQUITY, filed in the Superior Court on February 4, 1913, to enforce an alleged trust in certain hides and the proceeds thereof named in a trust receipt dated March 22, 1910, and signed "E. F. Mulholland Co."

After the entry of the rescript issued in pursuance of the decision reported in 224 Mass. 448, an interlocutory decree was made by *Lawton,* J., recommitting the case to the master for the purposes stated in the opinion. The master filed a supplemental report, to which no objections or exceptions were filed, and thereafter by order of *Wait,* J., after a hearing of the parties, a final decree was entered, which ordered

"That the master's supplemental report be and the same is hereby confirmed; and, it appearing that the plaintiff received the bill of lading as the agent of Kaufman, and upon accepting the draft to which it was attached, took title to the hides as security to itself for payment of the amount it had obligated itself to pay to Kaufman, and that it thereafter paid Kaufman out of its own funds; and that the only title which E. F. Mulholland Company ever had in and to the hides was such title as it held under the terms and provisions of the trust receipt;

"That as a matter of law, in view of the findings of the master and inference to be drawn therefrom, the deposits and the leather are sufficiently identified with Lot No. 73 to impress them with the trust claimed;

"That the claim of the Peoples National Bank against the firm of E. F. Mulholland and Company, composed of the defendant Mulholland and the late Cornelius J. Coughlin, be and hereby is

established at the sum of $4,540.57, together with interest thereon at the rate of six per cent from October 1, 1911, amounting in all on this tenth day of November, 1916, to $[5]933.01, at which sum the debt due to the plaintiff as aforesaid is established;

"That the defendant Coughlin, as administratrix of the estate of the late Cornelius J. Coughlin, has in her hands, possession and control the sum of $2,241.22, and the sum of $997.59 (together with any interest that may have accumulated thereon since the date of the deposit of said sums in the Federal Trust Company) as the proceeds of the property of the plaintiff described in the plaintiff's trust receipt set forth in the bill, together with 1,510 feet of mat calf leather and 10,452 feet of black ooze calf leather, which is also the proceeds of the property of the plaintiff described in said trust receipts, and that said moneys and said leather are the property of the plaintiff; and the said defendant Coughlin, administratrix as aforesaid, shall forthwith pay over and deliver unto the plaintiff said moneys and said leathers, the same to be applied in reduction of the debt due the plaintiff;

"That the defendant Mulholland pay unto the plaintiff the aforesaid sum of $5,933.01, with interest thereon subject to a credit to be allowed of the amount paid to the plaintiff, together with that realized from the aforesaid leather, and let execution issue therefor. The defendants are hereby directed to pay the plaintiff its costs, amounting to $61.28, and execution is to issue therefor."

The defendant Ellen T. Coughlin, administratrix, appealed from this decree.

*W. J. Cusick*, for the defendant Ellen T. Coughlin.

*Lee M. Friedman*, for the plaintiff.

RUGG, C. J. It was decided when this case was here at an earlier stage, as reported in 224 Mass. 448, that there was no finding by the master warranting an inference that the plaintiff purchased the hides from the foreign seller, Kaufman, on behalf of E. F. Mulholland and Company, hereafter called the firm, now represented by the defendants, and that it took title to itself as security for its advances in making such purchase and received the bill of lading and draft as agent for Kaufman, the original seller. Thereafter, the case was recommitted by the Superior Court to the master for determination of the facts as to the purchase of the hides from the foreign owner, Kaufman, and the vesting of the

title thereof, and the exact relation of the plaintiff to the purchase, the bill of lading, and the draft.

The interlocutory decree recommitting the case to the master for this purpose was proper. The first trial before the master had proceeded upon a footing respecting the plaintiff's title, which, in the light of facts now revealed, might have wrought injustice. The right of the plaintiff was not disclosed by the earlier report. It was within the power of the Superior Court under these circumstances, after rescript, to order a further hearing upon this point. *Day* v. *Mills*, 213 Mass. 585.

The supplemental report of the master plainly shows that the plaintiff purchased the hides in its own name and interest for the ultimate use of the firm, directly from the foreign seller, and paid for them. It therefore had the legal title to the hides and rightly dealt with them as owner in its relations with the firm, and was not a mortgagee or pledgee. The trust receipt which was employed by the plaintiff in its transaction with the firm is a well known instrument of commerce whereby the banker advancing the money on an importation takes title directly to himself and as owner delivers the goods to the dealer in whose behalf he is acting secondarily and to whom the title ultimately is to go when the primary right of the banker has been satisfied, the title remaining in the banker until the price is paid to him. The validity of such a trust receipt has been upheld in numerous of our decisions, most of which are collected in 224 Mass. at page 451. *Moors* v. *Drury*, 186 Mass. 424. *Commercial National Bank* v. *Canal-Louisiana Bank & Trust Co.* 239 U. S. 520, 524. *Century Throwing Co.* v. *Muller*, 116 C. C. A. 614. *In re Cattus*, 106 C. C. A. 171. *In re Coe*, 106 C. C. A. 181.

The plaintiff delivered the possession of the ninety-two bales of hides in question to the firm under a trust receipt with a sufficient description of them and with stipulations that the hides should be held "in trust" for the plaintiff and as its "property, with liberty to sell the same for their [its] account or to manufacture and remanufacture the same without cost or expense to them [it], and we also agree to keep said goods, and the manufactured product and proceeds thereof, . . . separate and capable of identification as their property," with further provisions to the effect that the plaintiff might at any time cancel the trust and repossess itself

of the hides, raw or as manufactured product. The relation between the bank and the firm growing out of the trust receipt was fiduciary and the latter was bound to the obligations flowing from that relation.

The firm received these ninety-two bales of hides and for its own convenience designated them as "Lot number 73." Some of these hides were sold and others were destroyed by fire. These drop out of the case. The others were sent to tanners to be tanned and in course of manufacture were commingled with three other much smaller lots of hides referred to as lots 58, 60 and 72, which, to quote the words of the master's report, "were held by the firm; under trust receipts to secure notes which had been given by the firm to the plaintiff, each of the notes and trust receipts having been in the same form as the note and trust receipt for lot 73 and each of the notes, except that given for lot 73, have been paid; that of the several lots of leather so mixed, which were thereafterwards known as lots 1 to 8, a part was delivered to the A. J. Foster Company to be sold on account for the firm of E. F. Mulholland and Company and a part was retained or disposed of by E. F. Mulholland and Company; that in lots 1 to 8 the proportion which lot 73 bore to the other lots with which it was mixed was about ninety per cent of lot 73 to ten per cent of all of the other lots that the skins contained in lots 58, 60 and 72 were, while in the raw state, of a higher grade than any of those contained in lot 73, but there was no evidence what grade of manufactured skins resulted from the tanning of either or all of the lots; that it is impossible to more definitely determine what part of lot 73 was delivered to the A. J. Foster Company, or what part was retained or disposed of by E. F. Mulholland and Company." The sum of $2,241.22 received from sales of the mixed lot of leather made by the A. J. Foster Company is now in a special bank deposit, and the sum of $997.59 received from sales made by the Mulholland firm from the mixed lot of leather is a part of a general deposit to the credit of that firm, and a certain quantity of the mixed lot of leather is in the hands of a bailee. It is not found that this commingling of the hides was done fraudulently. Perhaps it is a fair inference that the managing partner of the firm, Coughlin, could at all times during his life have sorted out the hides covered by the trust receipt and that, if he had lived, he could

have made the separation whenever required.   But it was his and the firm's duty under the terms of the trust receipt to keep the hides at all times, both in their raw and manufactured state, "separate and capable of identification."   That duty was not performed by one person alone being sufficiently familiar with the goods to be able to make a separation; but it required such a segregation or susceptibility to recognition that any one familiar with the trade would be able to select the property covered by the trust receipt, so that the plaintiff might with reasonable effort repossess itself of its property at any moment.   There was a breach of that duty by the commingling with other hides so that the possibility of picking out of the mass the property of the plaintiff was gone.

It is not necessary to determine that there was any moral turpitude involved in such commingling.   There is no ground for the inference that it was done with the knowledge or consent of the plaintiff or that it arose through accident or mistake, or the operation of a superior force.   It was done with a conscious purpose.   It was at the lowest intentional or through want of proper care.   It was done in disregard of their obligation to the plaintiff.   It was in this sense a wilful intermixing.   It was a breach of a fiduciary duty owed to the plaintiff and an unlawful invasion of its property rights.   The commingling having been done through the fault of the firm and being a wrong against the plaintiff, the burden of separating and tracing further its own property does not rest upon the plaintiff.   Where at common law through no fault of the owner there has been a negligent commingling of his property with that of another, so that it cannot be distinguished, it is held to be unjust to put the loss on the innocent and careful owner.   It ought to fall rather "on him whose carelessness or folly or misfortune" has caused the indiscriminate intermixture.   A commingling which flows from carelessness or breach of obligation belongs to the same class as one caused by intentional misconduct.   *Ryder* v. *Hathaway*, 21 Pick. 298, 306. *Willard* v. *Rice*, 11 Met. 493.   *Smith* v. *Sanborn*, 6 Gray, 134. *Adams* v. *Wildes*, 107 Mass. 123, 125.   *Stearns* v. *Herrick*, 132 Mass. 114.   *Union Naval Stores Co.* v. *United States*, 240 U. S. 284, 290.   See *Westinghouse Electric & Manuf. Co.* v. *Wagner Electric & Manuf. Co.* 225 U. S. 604, 619, 622.   See Ann. Cas.

1913 E 665. The rule was stated by Chancellor Kent in *Hart* v. *Ten Eyck*, 2 Johns. Ch. 62, 108, in these words: "If a party having charge of the property of others, so confounds it with his own, that the line of distinction cannot be traced, all the inconvenience of the confusion is thrown upon the party who produces it, and it is for him to distinguish his own property, or lose it." The equitable doctrine as to trusts is as was stated in *Lowe* v. *Jones*, 192 Mass. 94, 101, and requires "the identification of the trust property as passing into some other specific property or fund, as distinguished from the general assets."

It is plain that if the hides all had remained in one mixed lot of leather and none had been sold, there has been a sufficient tracing of the hides of the plaintiff into that commingled lot to permit it to establish a lien upon the lot for its claim. At common law under the rule applicable to commingled goods it could have held the entire lot to the satisfaction of its claim. It can hold that which remains of that lot. One, who without justification and in breach of fiduciary obligation has commingled his own property with that of another with which he has been entrusted, must at his peril return to the owner that which thus has been wrongfully appropriated. *Hittinger Fruit Co.* v. *Cambridge*, 218 Mass. 220, 226. *Spence* v. *Union Marine Ins. Co. Ltd.* L. R. 3 C. P. 427, 437. Since the amount received from sales of the mixed lot by the A. J. Foster Company constitutes a separate deposit, it stands on the same footing. The amount received from sales out of the mixed lot by the firm being still on deposit as part of a larger fund, it is impressed with a like trust for the benefit of the plaintiff. *Hewitt* v. *Hayes*, 205 Mass. 356. *Portuguese Fraternity* v. *Liberty Trust Co.* 215 Mass. 27. *National Bank* v. *Insurance Co.* 104 U. S. 54. *Peters* v. *Bain*, 133 U. S. 670, 694. *Harris* v. *Truman*, 7 Q. B. D. 340, 358.

The facts in the case at bar illustrate the converse of the principle applied in *Lowe* v. *Jones*, 192 Mass. 94, to the effect that where the proceeds of a fund cannot be traced no trust can be established. Here the property of the plaintiff is traced directly. It goes much further than a mere general enrichment of the estate of the firm arising from the conversion of property belonging to the plaintiff. Therefore its rights are established.

The decree is to be modified so as to make accurate the calcula-

tions of interest to the date of its final entry, and to include the costs of this appeal, and as thus modified is affirmed.

*So ordered.*