JAMES BROWN & others *vs.* GREEN AND HICKEY
LEATHER COMPANY & others.

Suffolk.   December 6, 1922. — March 1, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Equity Pleading and Practice,* Appeal, Master.   *Trust,* What constitutes.

Upon an appeal from a final decree in a suit in equity founded upon a report by a master which did not contain a report of the evidence before him, the master's findings must stand unless upon the face of the report they are inconsistent with each other or are contradictory and plainly wrong.

A manufacturer of leather, in return for letters of credit given to him by a firm of bankers, delivered to the bankers an instrument signed by him, entitled a "trust receipt," in which he agreed, with regard to certain hides described therein, "to hold said goods in trust for them, and as their property, with liberty to sell the same for their account or to manufacture and remanufacture the same without cost or expense to them, and" he also agreed "to keep said goods, and the manufactured product and proceeds thereof, whether in the form of money or bills receivable, or accounts, separate and capable of identification as their property, and hand the proceeds to them to apply . . . under the terms of" the letter of credit "and for the payment of any other indebtedness of" the manufacturer to the bankers.  The instrument also entitled the bankers "at any time [to] cancel this trust and take possession of said goods or the manufactured product or of the proceeds of such of the same as may have then been sold, wherever the said goods or proceeds may then be found, and in the

event of any suspension . . . or failure [on the part of the manufacturer] . . . or of the non-fulfillment of any obligation . . . all obligations, acceptances, indebtedness and liabilities whatsoever shall thereupon (with or without notice) at their option mature and become due and payable. . . . " *Held,* that

(1) The instrument was valid and established between the parties a relation fiduciary in its nature;

(2) The instrument gave to the manufacturer no right to deduct from the "proceeds" of the manufactured product expense incurred by him for legal services in prosecuting against the federal government a claim for damages resulting from the cancellation of a contract for the sale of the manufactured product for war purposes.

The printing of a document in a brief before this court does not bring that document before the court if it does not appear in the record.

The manufacturer, after delivering the trust receipt above described to the bankers and proceeding with the manufacturing of the hides into leather, became financially embarrassed, a meeting of his creditors was called, and, without an assignment being made or bankruptcy proceedings being instituted, a committee of the creditors was permitted to take over the entire management of his business. The bankers took possession of the hides and partly manufactured leather under the trust receipt and with the acquiescence of the committee of creditors, who entered into an agreement under which the bankers were to furnish the money to complete the manufacture into leather of the hides covered by the trust receipts, the leather was to be sold and the bankers were to be reimbursed for such advances out of the proceeds, and the bankers then would be paid the balance of such proceeds up to the amount of their advances to the manufacturer. This agreement was carried out, and there remained due to the bankers from the manufacturer the sum of $74,971. The bankers agreed with the manufacturer that they would waive claim to a cash dividend in respect to the claim due them "provided that all the leather, or proceeds of same, or claims based thereon, applicable to the" trust receipt were "applied in liquidation of" their claim, the bankers "to be covered for all . . . [their] outlay of every nature including legal expenses" and any balance to be returned to the manufacturer. The manufacturer assented. The manufacturer afterwards recovered $75,000 from the federal government for loss by reason of leather not delivered to the government because of a cancellation of contract by it. *Held,* that

(1) The contractual relation between the parties created by the letter of credit and the trust receipt was not affected by the appointment of the creditors' committee and the carrying on of the business by it with the assent of the manufacturer;

(2) The bankers were entitled to have applied to their claim the entire sum received from the federal government by the manufacturer, so far as necessary to settle their claim;

(3) The bankers were entitled to recover for reasonable and necessary expenses incurred by them in the employment of counsel.

BILL IN EQUITY, filed in the Supreme Judicial Court on July 6, 1920, and afterwards amended, by the members of a copartnership doing business under the name and style, Brown Brothers and Company, and the members of a copartnership doing business

under the name, Brown, Shipley and Company, against Green and Hickey Leather Company, a Massachusetts corporation, and various banking corporations, to establish a debt due to Brown Brothers and Company (hereinafter called the plaintiffs) from Green and Hickey Leather Company (hereinafter called the defendant) and to have its payment directed from the proceeds of a sale of certain leather and the settlement of a claim against the federal government, described in the opinion. Brown, Shipley and Company were joined as plaintiffs for the sole purpose of asserting that they had no interest in the subject matter of the controversy although they were named in the "trust receipts" hereinafter described.

The suit was referred to a master, who found the following facts, among others:

There were five "trust receipts" of leather, signed by the defendant as described in the opinion, and in substance of the following character:

"Trust Receipt.

"Received from Brown Brothers & Co. and Brown, Shipley & Co., the following goods and merchandise, their property, specified in the Bill of Lading, [here followed a description of the bill of lading and of the numbers and markings on the bales] and in consideration thereof, I [we] hereby agree to hold said goods in trust for them, and as their property, with liberty to sell the same for their account or to manufacture and remanufacture the same without cost or expense to them, and we also agree to keep said goods, and the manufactured product and proceeds thereof, whether in the form of money or bills receivable, or accounts, separate and capable of identification as their property, and hand the proceeds to them to apply against the acceptances of Brown Brothers & Co. or Brown, Shipley & Co., on my [our] account, under the terms of Letter of Credit No. 156 issued for my [our] account and for the payment of any other indebtedness of mine [ours] to Brown Brothers & Co. or Brown, Shipley & Co.

"Brown Brothers & Co., or Brown, Shipley & Co., may at any time cancel this trust and take possession of said goods or the manufactured product or of the proceeds of such of the same as may have then been sold, wherever the said goods or proceeds may then be found, and in the event of any suspension, proceedings in

bankruptcy, or failure, or assignment for benefit of creditors, on. my [our] part, or of the non-fulfillment of any obligation, or of the non-payment at maturity of any acceptance made by me [us] under said credit, or under any other credit issued by Brown Brothers & Co., or Brown, Shipley & Co., on my [our] account or of any indebtedness on my [our] part to either of them, all obligations, acceptances, indebtedness and liabilities whatsoever shall thereupon (with or without notice) at their option mature and become due and payable. The said goods and the manu-factured product thereof while in my [our] hands shall be fully insured against loss by fire, and the insurance money received for any loss shall be subject to the trust herein contained in the same manner as the goods themselves."

On April 1, 1919, the plaintiffs wrote to the defendant as follows: "We beg to confirm our verbal statement made to you in view of your proposed settlement of the Green & Hickey Leather Co. with their creditors, that in case of said settlement with all the creditors except ourselves, we agree to waive any claim to a cash dividend from the Green & Hickey Leather Co. in respect to our claim, provided that all the leather, or proceeds of same, or claims based thereon, applicable to the Trust Receipts held by us under Letters of Credits issued by us to pay for same, is applied in liquidation of our claim. It is understood that any balance remaining after covering the amount of our advances, expenses and charges, is to be returned to the Green & Hickey Leather Co."

On April 2, the defendant replied as follows: "With reference to the letter addressed to the writer personally under date of April 1st regarding verbal statement in reference to affairs of the Creditors of the Green & Hickey Leather Company and yours, have shown this letter to my friends and it seems to be quite satisfactory with the exception of the last paragraph: — 'It is understood that any balance remaining after covering the amount of our advances, expenses and charges, is to be returned to the Green & Hickey Leather Company.' They wish you would write us advising more fully just what you mean by advances, expenses and charges. A reply by return mail will be greatly appreciated."

On April 3, the plaintiffs replied as follows: "In reply to your favor of yesterday's date in regard to amounts due to us by the

Green & Hickey Leather Co., we would say that we expect to be covered for all our outlay of every nature including legal expenses, putting us in the same position financially as though our advances under Letters of Credit had been covered when due."

On August 22, 1919, the defendant wrote to the plaintiffs as follows: "We beg to confirm herewith our yesterday's conversation and it is understood and agreed that the proceeds arising out of our claim against the Government in respect to the leather described in your letter to us of April 1st, 1919, shall belong to you to the extent set forth in said letter." This letter of August 22, the master found "was intended by the defendant to be an answer to the plaintiffs' letter of April 1 and an assent to the proposition therein made as explained in the letter of April 3. The conversation referred to in the last-mentioned letter appears to have been merely a suggestion by Mr. Nash [for the plaintiffs] that the defendant had not formally answered the previous letter and a request that the defendant put its assent to the plaintiffs' proposition in writing. The defendant's settlement with its creditors other than the plaintiffs appears to have been made shortly after the last-mentioned letter."

Other material findings by the master are described in the opinion.

The defendant filed objections and exceptions to the master's report, material among which were the following:

"4. To the findings of the master . . . that a balance [was] due the plaintiffs from the defendant, amounting to $74,971.19, with interest to July 6, 1920, and because the master refused and failed to find that the defendant owed the plaintiffs nothing, and, further, because the master failed and refused to find that the plaintiffs waived its [their] claim or claims if any they had, by reason of negotiations reduced to writing in the form of letters or correspondence under date of April 1, 1919, from Brown Brothers to T. Frank Hickey, Esq., and from The Green & Hickey Leather Company in reply thereto under date of April 3, 1919, and a reply thereto from The Green & Hickey Leather Company under date of August 22, 1919."

"12. To the [following] findings of the master's report: 'I summarize my findings as follows: 1. At the date of the filing of the original bill in this case there was due the plaintiffs, by reason

of advances made by them to the defendant in the manner herein specified, a balance of $74,971.19, including interest. 2. In the event that the contract between the parties set forth in the letters of April 1, April 2, April 3, and August 22, 1919, is not to be construed as discharging the defendant from its contract obligation to the plaintiffs theretofore existing, the defendant owes the plaintiffs the sum of $74,971.19 with interest, from the filing of the bill, to wit, July 6, 1920.' And because the master failed and refused to find that the letters of April 1, April 2, April 3, and August 22, 1919, from the plaintiff to the defendant discharged the said defendant from its contract obligation to the plaintiff theretofore existing."

"15. To the findings of the master because of his failure in refusing to find that the payment of $8,969.21, under date of October 28, 1919, was made to the plaintiff, and because of his failure to allow the defendant for said payment, the cancelled check being shown as Exhibit 14."

The defendant also moved that the report be recommitted to the master for the hearing of evidence alleged to have been newly discovered, and for further findings of fact.

The motion and exceptions were heard by *Jenney*, J., by whose order there were entered an interlocutory decree denying the motion, overruling the exceptions and confirming the report, and a final decree directing the defendant to pay to the plaintiffs $74,971.19 with interest and costs. The defendant appealed from both decrees.

*F. P. Ryan*, (*J. W. Burke* with him,) for the defendant Green and Hickey Leather Company.

*H. E. Warner*, (*H. Twombly* with him,) for the plaintiffs.

CROSBY, J. This is a bill for an accounting and to reach the proceeds of certain hides delivered by the plaintiffs, Brown Brothers and Company, to the Green and Hickey Leather Company. The plaintiffs, Brown Brothers and Company, are a co-partnership; they alone are the parties plaintiff who have any interest in the subject matter before the court in this suit. Green and Hickey Leather Company is a Massachusetts corporation engaged in the business of tanning and manufacturing leather, with places of business in Shrewsbury and Winchendon in this Commonwealth. The bill has been dismissed or discontinued as

to the other defendants. The questions at issue arise only between Brown Brothers and Company and the Green and Hickey Leather Company; they will be referred to respectively as the plaintiffs and the defendant. The suit was referred to a master who has filed a report; as the evidence is not before us, his findings must stand unless inconsistent with each other. The defendant appealed from the interlocutory decree denying its motion to recommit the report, overruling the exceptions to the report, and confirming it; and from a final decree directing the defendant to pay the plaintiffs the sum of $74,971.19 with interest from July 6, 1920, and costs.

In May, June and September, 1918, the defendant made arrangements with the plaintiffs, who are bankers, to finance for it certain purchases of hides which it was about to make; and the plaintiffs issued to the defendant four letters of credit dated respectively May 17, June 25, September 25, and September 26, 1918. Under these letters of credit the defendant purchased three hundred and seventy-nine bales of hides which were shipped by the sellers in several shipments to Winchendon by bills of lading in which the plaintiffs were named as consignees. On or about the dates of arrival of these shipments, the plaintiffs authorized delivery of the hides to the defendant and took from it certain trust receipts describing the hides so delivered. Upon receipt of the hides the defendant began to tan them and manufacture them into leather. The trust receipts provided that the hides and the leather manufactured therefrom and all proceeds thereof should remain the property of the plaintiffs and should be applied against the advances made to the defendant under the letters of credit.

It is found by the master that on September 30, 1918, the defendant became financially involved and was unable to meet its obligations at their maturities; that it thereupon called a meeting of its creditors, at which a creditors' committee was appointed and an arrangement entered into between the defendant and the committee by which the latter assumed control of the business for the benefit of the creditors; that no assignment was made and no proceedings in bankruptcy were instituted, and title to the property remained in the defendant; that the business was thereafter carried on in the name of the defendant but was subject to the direction and control of the committee. At about this time the plaintiffs' representative took possession of the hides covered

by the trust receipts. The hides were then in various stages of manufacture into leather and were left by the plaintiffs on the defendant's premises where they were found. The plaintiffs notified the committee that they claimed title to all the hides manufactured or in process of manufacture from hides described in the trust receipts, and the master found that later the committee acquiesced in that claim.

At about the time the plaintiffs took possession of the property they and the committee entered into an agreement under which the plaintiffs were to furnish the money to complete the manufacture into leather of the hides covered by the trust receipts, the leather was to be sold and the plaintiffs were to be reimbursed for such advances out of the proceeds, and the plaintiffs would then be paid the balance of such proceeds up to the amount of their advances to the defendant. The master found that, except for a complete accounting for the proceeds of the leather manufactured, this agreement was fully carried out; and that the account filed in substitution of the earlier account, showing a balance due the plaintiffs of $74,971.19 with interest to July 6, 1920, is conceded by the plaintiffs to be accurate. He also found that the balance due the plaintiffs is $74,971.19 with interest from July 6, 1920.

It appears that before the credits had been given by the plaintiffs to the defendant, the latter had made an arrangement with officials of the War Department of the United States to devote itself exclusively to the manufacture of "Bark Tanned Leather" for use in making army shoes. The hides described in the trust receipts were purchased for this purpose and were in various stages of that process when the defendant's financial difficulties arose. About this time the defendant was notified by the government officials not to manufacture any more leather for such purpose, and thereafter as a result of the armistice on November 11, 1918, all demand for the leather ceased. Accordingly the stock then on hand could not be used for other purposes without substantial loss to the defendant. Thereafter the defendant made claim against the government for the losses alleged to have been sustained by it and engaged attorneys to prosecute its claims, which were of three kinds: (a) for leather manufactured and not taken; (b) for expenses incurred in enlarging the capacity of its

tannery at Winchendon and remodelling its finishing plant at Shrewsbury; and (c) for loss of its established trade and business. After these claims were made, an act of Congress, known as the Dent Act, went into effect on March 2, 1919.

While the defendant's claim was pending, the creditors' committee made a settlement with all the creditors of the defendant other than the plaintiffs, and thereafter the control of the business was returned to its officers. Before this settlement was effected, the plaintiffs had certain correspondence with the defendant and therein stated to the latter that they would waive any claim to a cash dividend from the defendant in respect to the amount due to them "provided that all the leather, or proceeds of same, or claims based thereon, applicable to the Trust Receipts held by . . . [them] under Letters of Credits issued by . . . [them] to pay for same, . . . [was] applied in liquidation of . . . [their] claim;" and further: "It is understood that any balance remaining after covering the amount of our advances, expenses and charges, is to be returned to the Green & Hickey Leather Co." In a letter written to the plaintiffs, the defendant assented to the terms so made as a condition of its agreement to waive a cash dividend, and subsequently settled with all its creditors other than the plaintiffs.

The defendant waived that part of its claim against the government based upon loss of its regular business which had been discontinued in order to carry out its undertaking to make leather for army shoes, but insisted upon its claims for losses on account of undelivered leather and for the expenses incurred by it in enlarging and remodelling its plants. As to the latter the master found that the Board of Contract Adjustment made the following finding: "The evidence, however, is insufficient to establish that these changes were made at the request of the Government or that the Government is for any reason liable for any loss claimant may have sustained by reason of such changes," and accordingly decided that this portion of its claim should be denied. Thereafter an allowance of $75,000 was made to the defendant for undelivered leather, which was paid by the United States to the defendant about June 23, 1920. No part of this sum has been paid to the plaintiffs. The defendant also has received the sum of $4,600, on account of leather covered by the trust receipts, for which it has

not accounted. It now has on hand five thousand four hundred and five double bends of leather manufactured from hides which are the property of the plaintiffs under the trust receipts.

The defendant contends that the plaintiffs, by reason of the appointment of the creditors' committee and the carrying on of the business thereunder, and of the correspondence between the parties, have waived any claim which they might otherwise have against the defendant, for anything except the application of the leather or the proceeds thereof to their claim under the letters of credit and trust receipts; and that its liability is limited to the value of the leather or proceeds thereof or claims based thereon. We are of opinion that the contractual relation between the parties created by the letters of credit and the trust receipts was not affected by the appointment of the creditors' committee, and the carrying on of the business by it with the assent of the defendant. No assignment was made by the defendant nor were any proceedings in bankruptcy instituted; and the title to the hides remained in the plaintiffs and the business continued to be carried on in the name of the defendant. Although the plaintiffs waived their claim to a cash dividend they did so upon the express understanding and condition that "all the leather, or proceeds of same, or claims based thereon, applicable to the Trust Receipts held by . . . [them] under Letters of Credit issued by . . . [them] to pay for same, . . . [should be] applied in liquidation of . . . [their] claim." The defendant in its letter of August 22, 1919, to the plaintiffs stated: "it is understood and agreed that the proceeds arising out of our claim against the Government in respect to the leather described in your letter to us of April 1, 1919, shall belong to you to the extent set forth in said letter." In these circumstances, the correspondence between the parties, above referred to, cannot be construed as amounting to a waiver of the plaintiffs' rights under the trust receipts. The receipts in each instance recited that the defendant has received the hides of the plaintiffs and that it agrees "to hold said goods in trust for them, and as their property, with liberty to sell the same for their account or to manufacture and remanufacture the same without cost or expense to them, and . . . also agree to keep said goods, and the manufactured product and proceeds thereof, whether in the form of money or bills receivable, or accounts, separate and capable of

identification as their property, and hand the proceeds to them" to apply against its indebtedness to the plaintiffs. The relation between the parties so established was fiduciary in character and binding upon the defendant. *Peoples National Bank* v. *Mulholland,* 228 Mass. 152. The validity of trust receipts, such as were given by the defendant in the case at bar, cannot be questioned. *Moors* v. *Drury,* 186 Mass. 424. *Peoples National Bank* v. *Mulholland, supra. Commercial National Bank of New Orleans* v. *Canal-Louisiana Bank & Trust Co.* 239 U. S. 520. *In re Coe,* 106 C. C. A. 181.

The defendant contends that it is entitled to be allowed for expenses incurred by it for legal services in the prosecution of its claim against the government and that such expenses should be deducted from the amount due the plaintiffs. The plaintiffs were entitled under the trust receipts to the "proceeds" of the leather manufactured by the defendant. Manifestly the word "proceeds" means gross proceeds, without deduction on account of expense of manufacturing the hides into leather or selling them, and without deduction for other expenses. *Moors* v. *Wyman,* 146 Mass. 60. We see no sound reason for holding that expense incurred for legal services stands upon a different footing from expense of manufacture; besides the trust receipts expressly provide that the authority of the defendant in connection with the hides is to be exercised "without cost or expense" to the plaintiffs; accordingly the defendant is not entitled to an allowance for money expended for legal services. *Moors* v. *Wyman, supra.*

The defendant annexes to its brief what purports to be a copy of a check, marked Exhibit 14, for $8,969.21, dated October 28, 1919, payable to the plaintiffs and signed by the defendant. The check appears to have been indorsed by the plaintiffs and cancelled. The defendant argues that it has not received credit for the proceeds of this check and that it is entitled to such credit. There is no reference to the check in the record, nor does it appear that it was offered in evidence as an exhibit. In these circumstances the question whether the defendant has been credited with the amount for which the check was drawn is not properly before us.

The plaintiffs are entitled to have applied to their claim the entire sum received from the government by the defendant without

deductions, so far as necessary to settle their claim, which the master finds to be $74,971.19 and interest from July 6, 1920, the date of the filing of the bill. As the defendant was not discharged from its contractual liability to the plaintiffs under the trust receipts, the defendant's fourth and twelfth exceptions cannot be sustained. The exceptions relating to the interest charges, found by the master to be due the plaintiffs, cannot be sustained as the evidence is not reported. The plaintiffs are entitled to recover for reasonable and necessary expenses incurred by them in the employment of counsel, as the correspondence expressly provides that they are "to be covered for all . . . [their] outlay of every nature including legal expenses." The contention of the defendant that the findings of the master are inconsistent cannot be sustained. Many exceptions are based upon findings of the master or his failure to make certain findings; as the evidence is not reported these exceptions must be overruled. We find no error on the part of the master, therefore all exceptions to his report are overruled. The motion to recommit the report was addressed to the sound discretion of the court and we cannot say that in the denial of it that discretion was improperly exercised.

Accordingly the interlocutory decree denying the motion to recommit the master's report, overruling the exceptions thereto, and confirming the report, is affirmed; and the final decree is affirmed with costs of the appeal.

*So ordered.*