## T. D. DOWNING COMPANY *vs.* THE SHAWMUT CORPORATION OF BOSTON.

Suffolk.    December 13, 1922. — May 23, 1923.

Present: RUGG, C.J., DeCOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Agency*, Existence of relation.    *Trust.    Contract*, Implied.

If a banker, at the solicitation of an importer, issues to the seller of foreign goods, held subject to payment of importation duties in a bonded warehouse, a letter of credit to enable the importer to finance the importation, and, pursuant to an agreement in writing of the importer that " the title to all property which shall be purchased or shipped under the said credit, the bills of lading thereof, the policies of insurance thereon and the whole proceeds thereof, shall be and remain in " the banker " until the payment

of any bills drawn upon said credit," accepts a time draft in favor of the seller, receives from the seller the invoice, negotiable warehouse receipts and customs withdrawal entries covering the goods purchased and turns over to the importer the warehouse receipts and customs withdrawal entries in return for a document entitled a " trust receipt," wherein the importer stipulates in substance that he will hold " said goods in trust " for delivery to any purchaser and will collect from the purchaser the proceeds of sale and immediately deliver them to the banker to be applied to payment of the amount due on its acceptance pursuant to the credit given and any other indebtedness due it, with a right in the banker at any time to cancel the trust and repossess itself of the merchandise until it shall have been delivered to purchasers, the importer is in no sense an agent of the banker and the banker cannot be held liable to a custom house broker for sums paid, expenses incurred and commissions earned by him, at the request of the importer, with respect to such goods.   Distinguishing *Moors* v. *Wyman*, 146 Mass. 60.

CONTRACT by a custom house broker against a banking corporation to recover $1,549.40, the amount of certain duties paid and expenses incurred by the plaintiff at the request of an importer whose importation of the goods upon which the duties were paid and as to which the expenses were incurred was financed by the defendant.   Writ dated June 3, 1921.

In the Superior Court, the action was heard by *McLaughlin*, J., without a jury.   Upon the issuance of the letter of credit, described in the opinion, and upon the back of a copy of it retained by the defendant, the importer, C. J. Tsivoglou, Inc., executed the following agreement:

" Boston, Massachusetts, U.S.A. Jan. 3, 1921.

" The Shawmut Corporation of Boston, Dear Sirs:   In consideration of your having opened a credit for our account and delivered Letter of Credit No. 185, a true copy of which is on the other side, we hereby agree to the terms thereof, and jointly and severally promise to provide you in Boston or New York [     ] days previous to maturity of the bills drawn in virtue thereof, sufficient funds in cash to meet the payment of the same with ¼ per cent. commission, and we undertake to insure at our expense for your benefit against all risk the property purchased or shipped pursuant to said Letter of Credit in companies satisfactory to you.

" We agree that the title to all property which shall be purchased or shipped under the said credit, the bills of lading

thereof, the policies of insurance thereon and the whole proceeds thereof, shall be and remain in you until the payment of any bills drawn under said credit or any renewals of said bills and also until the payment of all sums which may be due or become due on said bills or otherwise arising from said credit and any and all other indebtedness or liability now existing or hereafter incurred or created by us to you on any and all other transactions now or hereafter had with you, with full power and authority on the non-performance of any of the promises herein contained to take possession and dispose of the same or any security substituted therefor or any addition thereto at your discretion for your reimbursement at public or private sale without demand, notice or advertisement. If in connection with this credit, it becomes necessary for you to incur any expense or liability whatever, we agree to indemnify and save you harmless, and you are hereby authorized to deduct from the proceeds of any sale of security held hereunder, in addition to our indebtedness any such expense incurred by you together with all expenses of such sale including commission for sale and guaranty.

" Should the market value of said property either before or after its arrival, fall so that the net proceeds thereof (all expenses, freight, duties, etc., being deducted) would be insufficient in your opinion to cover your advances there against with commission and interest, we agree to give you on demand any further security you may require, and in default thereof, you shall be entitled to sell such merchandise forthwith or to sell " to arrive " irrespective of the maturity of the acceptances under this credit, we being held responsible to you for any deficit which we promise to pay you in cash on demand.

" Should we anticipate the payment of any portion of the amount payable, interest is to be allowed at a rate of [      ] per cent.

" It is understood and agreed that if the documents representing the property for which the said credit has been issued shall be surrendered under a trust receipt, collateral security satisfactory to the Bank, such as stocks, bonds,

warehouse receipts or other security shall if requested be given to the Bank to be held until the terms of the credit have been fully satisfied and subject in every respect to the conditions of this agreement.

" It is further understood and agreed in the event of any suspension, failure, assignment for benefit of creditors, or bankruptcy of the undersigned or any of them, or of the non-payment at maturity of any acceptance made by us, or of the non-fulfillment of any obligation under said credit or under any other credit issued by The Shawmut Corporation of Boston on our account or of any indebtedness or liability on our part to you, all obligations, acceptances, indebtedness and liabilities whatsoever shall thereupon, at your option, then or thereafter exercised, without notice, mature and become due and payable.

" It is further understood and agreed that you shall not be held responsible for the correctness or validity of shipping documents, nor for the description, quantities, quality or value of the merchandise declared therein, nor for the delay or deviation from instructions in regard to shipments.

" In case we should hereafter desire to have this credit confirmed, altered or extended by cable (which will be at our expense and risk) we hereby agree to hold you harmless and free from responsibility for errors or delays in cabling, whether on the part of yourself or your agents here or elsewhere, or on the part of the cable companies.

" This obligation is to continue in force and be applicable to all transactions notwithstanding any change in the composition of the firm or firms, parties to this contract or in the user of this credit, whether such change shall arise from the accession of one or more new partners or from the death or secession of any partner or partners.

" All rights arising under this agreement shall be determined according to the laws of the Commonwealth of Massachusetts."

The " trust receipts," described in the opinion, were practically alike, although not of the same phraseology. That issued for the first shipment was as follows:

" Trust Receipt (For Delivery to the Purchaser).

" Boston, Mass., January 6, 1921.

" Received from The Shawmut Corporation of Boston the following goods and merchandise, *its property*, specified in the . . . , dated . . . marked and numbered as follows: Negotiable Warehouse Receipts of the National Cold Storage Co., Inc., #3420, covering 624 bags peanuts, #3421 covering 888 bags peanuts, 2 sets withdrawal permits.

$3,031.20

" We agree to hold said goods in trust, to deliver the same to . . . who have purchased the same for . . . payable in . . . and to obtain from the purchaser the proceeds of the sale of the same.

" In consideration of the delivery of said goods to us in trust we agree to deliver them immediately to said purchasers, and to collect the proceeds of sale, and immediately deliver the same to The Shawmut Corporation of Boston in whatever form collected, to be applied by it against acceptances of said Corporation on our account under terms of Letter of Credit No. 185 or acceptance agreement dated . . . and to the payment of any other indebtedness of ours to said Corporation.

" It is understood that if such proceeds be in notes or bills receivable, they shall not be so applied until paid, but with liberty meanwhile to The Shawmut Corporation of Boston to sell or discount and so apply net proceeds.

" The Shawmut Corporation of Boston may at any time cancel this trust, and may by its representative, or otherwise, enter and take possession of said goods until the same have been delivered to said purchasers and of the proceeds of such goods as may then have been sold wherever said goods or proceeds may then be found, and we agree that said goods shall not be deposited in any warehouse except in the name of, as the property of and subject to the order of The Shawmut Corporation of Boston, and shall not be shipped under any Bill of Lading unless The Shawmut Corporation of Boston is named therein as consignee; except when shipped to the above purchaser.

" C. J. Tsivoglou Inc.

" C. J. Tsivoglou, Treas."

Other material facts are described in the opinion. At the close of the evidence, the defendant asked, among others, for a ruling that on all the evidence the plaintiff could not recover on any count. The request was denied. The judge found for the plaintiff in the sum of $1,628.68; and the defendant alleged exceptions.

*D. F. Carpenter,* (*A. B. Nelson* with him,) for the defendant.
*J. H. Powers,* for the plaintiff.

RUGG, C.J. This is an action of contract by a custom house broker to recover certain duties paid by it and expenses and commissions due it. The defendant is a banking corporation engaged in financing the importation of foreign goods. An importer, C. J. Tsivoglou, Inc., applied to the defendant for credit for the purchase of nuts from the Asia Banking Corporation. Credit was given as requested and on its faith the owner of the nuts, the Asia Banking Corporation, drew a time sight draft on the defendant which it accepted and paid at maturity. The draft, when sent to the defendant for acceptance, was accompanied by the invoice, negotiable warehouse receipts and customs withdrawal entries covering the goods purchased. The defendant turned over the warehouse receipts and the customs withdrawal entries to the importer, who gave therefor a trust receipt describing and acknowledging receipt of the papers thus coming into its possession and the goods thereby reppresented. The trust receipt contained an agreement by the importer to hold " said goods in trust " for delivery to any purchaser and to collect from the purchaser proceeds of sale and immediately deliver same to the defendant to be applied to payment of amount due on its acceptance pursuant to credit given and any other indebtedness due it, with right in the defendant at any time to cancel the trust and repossess itself of the merchandise until the same shall have been delivered to purchasers. The goods at this time were in a storage warehouse in the State of New York. Goods imported into this country may be placed in bonded warehouses, so called, by a customs broker without the payment of duties, and withdrawn from time to time as desired only on consent of the customs broker expressed by " customs

withdrawal entries " and on payment of duties. It is a custom of the business that, where a customs broker is requested by an importer to withdraw a part of merchandise in bond, he will not hesitate to pay the duties and give delivery on that part if sufficient merchandise is left in his control under customs withdrawal entries to protect him for duties already paid. The plaintiff had had large dealings with the importer in the case at bar. Relying on its credit and at its request and influenced by the fact that it had possession of all the indicia of title, the plaintiff paid the customs duties and permitted the importer to remove a considerable part of the merchandise from the bonded warehouse, in ignorance of the defendant's relations thereto. Thereafter the defendant demanded of the plaintiff all the merchandise remaining in its possession or under its control by reason of customs withdrawal receipts, paying duties, charges and commissions on such remaining merchandise. The defendant refused to pay the duties, charges and commissions on the merchandise withdrawn by the importer. The importer has failed to reimburse the plaintiff. Hence this action.

The trust receipt, given to the defendant by the importer with the negotiable warehouse receipts and the customs withdrawal entries, is a well known instrument in common use between bankers and importers. The nature of the transaction is that the banker advancing the money for the merchandise imported takes title directly to himself and retaining title in himself until the price of the merchandise is paid to him delivers possession to the importer or merchant in order that the latter may carry out his own commercial plans respecting the importation. The validity of such a trust receipt has been established by many decisions. In general the relation between the banker and the importer is that the former takes title as security for his advances and is under obligation to transfer title to the latter or to his order when the purchase price as represented by the advances has been paid. The banker is owner under contract to sell and deliver when paid the price agreed upon. The banker has no part in the commercial adventure of the importer. The

banker expects and is entitled to receive only the advances, while the profit belongs wholly to the importer. *Peoples National Bank* v. *Mulholland,* 224 Mass. 448, 451; *S. C.* 228 Mass. 152, 155 and cases collected. *Brown* v. *Green & Hickey Leather Co.* 244 Mass. 168. The plaintiff does not rest its claim on any direct contact with the defendant. It contends that the importer was the agent for the defendant as undisclosed principal in incurring the obligations here in suit.

The importer was in no proper sense the agent of the banker. They were dealing with each other as distinct parties. The risks of the importation under the contracts between the two were wholly with the importer to whom alone the profits would accrue. There is nothing on the face of the papers, embodying the legal relations of the two, to afford indication of principal and agent. The case at bar is distinguishable from *Moors* v. *Wyman,* 146 Mass. 60, 63, where the trust receipt itself expressly stated that the custodian of the merchandise held it as agent for the banker. This factor is not decisive because the relation of principal and agent may arise wholly by implication from the conduct of the parties and the circumstances of the particular case; and the scope of the agency may also be determined in the same way. That principle does not control on the facts here disclosed. The essential elements of principal and agent are lacking. The defendant had no interest in getting the merchandise out of the bonded warehouse. The expenses connected therewith were not named as a part of the contract between the defendant and the importer. They were no more essential to the success of the business of the importer than their insurance or storage after release from the bonded warehouse and before their ultimate sale.

The trial judge rested his conclusion apparently on *Moors* v. *Wyman,* 146 Mass. 60. That case is distinguishable. An examination of the original papers in that case shows that the trust receipt expressly created the relation of agency. The trust receipt here in issue is essentially different in tenor and in legal effect.

It is not necessary to determine the extent of the plain-

tiff's lien because that was lost by delivery of the merchandise to the defendant.

The defendant has done nothing by which it is estopped to deny its liability to the plaintiff. It stands in no different position from the ordinary owner of personal property who entrusts its custody to a third person without making such custodian his agent. *Royle* v. *Worcester Buick Co.* 243 Mass. 143, 146. It simply has engaged in an ordinary business transaction. Estoppel is not applicable. *Boston & Albany Railroad* v. *Reardon,* 226 Mass. 286.

If follows that the defendant's first request should have been granted to the effect that the plaintiff could not recover on any count of its declaration.

*Exceptions sustained.*