PEOPLES NATIONAL BANK *vs.* ELIZA B. MULHOLLAND & another.

Suffolk.    March 6, 1916. — June 21, 1916.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Pledge. Mortgage,* Of personal property. *Trust,* Creation.

Where a bank advanced to an importer of hides the money necessary to pay for a certain shipment of hides and, before advancing the money, received from the importer his promissory note for the sum to be advanced and an instrument in writing called a "trust receipt," which gave a detailed description of the hides then imported and declared that the importer held them in trust for the bank, retaining liberty to manufacture or sell them on account of the bank, and that the bank at any time might take possession of them or of the product manufactured from them or of the proceeds of such of them as should have been sold, it was *held,* that this instrument did not operate as a pledge of the hides, because they never were delivered to the bank, nor did it constitute a mortgage of the hides as against creditors of the importer, because it was not recorded, and that the instrument created no trust in products manufactured from the hides and money received from the sale of a part of them which had been mingled with other products and other money so that they were not susceptible of separation and identification.

BILL IN EQUITY, filed in the Superior Court on February 4, 1913, to enforce an alleged trust in certain hides and the proceeds thereof named in a trust receipt dated March 22, 1910, and signed "E. F. Mulholland Co."

The trust receipt, of which a copy was annexed to the bill, was as follows:

"Trust Receipt.

Received from the People's National Bank of Roxbury, the following goods and merchandise, their property, specified in the Bill of Lading per Steamer 'Maasstroom,' dated Amsterdam, Mar. 5th, 1910, marked and numbered as follows:

[detailed description]

"Ninety-two bales dry hides.

"and in consideration thereof, we hereby agree to hold said goods in trust for them, and as their property, with liberty to sell the same for their account or to manufacture and re-manufacture the same without cost or expense to them, and we also agree to keep said goods, and the manufactured product and proceeds thereof, whether in the form of money or bills receivable, separate and capable of identification as their property, and hand the proceeds to them to apply against our demand note dated Mar. 22nd, 1910, for seven thousand two hundred three and 70/100 (7203.70) dollars, payable to said Peoples National Bank, and for the payment of any other indebtedness of ours to Peoples National Bank.

"The Peoples National Bank may at any time cancel this trust and take possession of said goods or the manufactured product, or of the proceeds of such of the same as may have then been sold, wherever the said goods or proceeds may then be found, and in the event of any suspension, proceedings in bankruptcy, or failure, or assignment for benefit of creditors, on our part, or of the non-fulfillment of any obligation, or of the non-payment at maturity of any acceptance or note made by us, or any obligation of ours to the People's National Bank, on our account or of any indebtedness on our part, all obligations, acceptances, indebtedness and liabilities whatsoever shall thereupon (with or without notice) at their option mature and become due and payable. The said goods and the manufactured product thereof, while in our hands shall be fully insured against loss by fire, and the insurance money received for any loss shall be subject to the trust herein contained in the same manner as the goods themselves."

The case was heard by *Morton*, J., upon a master's report. The facts found by the master are stated in the opinion. The judge ruled as matter of law that in view of the findings of the master and the inferences to be drawn therefrom the deposits and leather

in question were identified sufficiently to impress them with the trust alleged in the bill. He made a final decree confirming the master's report and ordering that the debt owed to the plaintiff by the firm of E. F. Mulholland and Company, composed of the defendant Mulholland and the late Cornelius J. Coughlin, was established in the sum of $4,540.57 with interest at the rate of six per cent per annum from October 1, 1911, amounting on December 18, 1915, to $5,688.51, that the defendant Coughlin as administratrix of the estate of Cornelius J. Coughlin had in her possession and control the sum of $2,241.22 and the sum of $997.59 (with any interest accumulated thereon since the deposit of those funds in the Federal Trust Company) as the proceeds of the property of the plaintiff described in the trust receipt together with ten thousand four hundred and fifty-two feet of black ooze calf leather, also the proceeds of the plaintiff's property described in the trust receipt, that such money and leather were the property of the plaintiff and that the defendant Coughlin as administratrix forthwith should pay and deliver such money and leather to the plaintiff to be applied in reduction of the debt due to it from the firm of E. F. Mulholland and Company.

And it further was ordered "That the defendant Mulholland pay unto the plaintiff the aforesaid sum of $5,688.51, with interest thereon, subject to a credit to be allowed of the amount paid to the plaintiff, together with that realized from the aforesaid leather, and let execution issue therefor. The defendants are hereby directed to pay the plaintiff its costs, amounting to $24.96, and execution is to issue therefor."

The defendant Coughlin, administratrix, appealed from the decree.

*W. J. Cusick*, for the defendant Coughlin.

*Lee M. Friedman*, for the plaintiff.

PIERCE, J. Before the summer of 1911 the defendant Mulholland and one Cornelius J. Coughlin were copartners under the name and style of E. F. Mulholland and Company, and were engaged in the business of importing hides which they either sold in the raw state or had them tanned into leather and then sold. In the summer of 1911 the copartnership was dissolved, and thereafter Coughlin continued the business until his death on September 24, 1911. The defendant Ellen T. Coughlin was appointed

the administratrix of his estate, which has been represented insolvent.

On March 22, 1910, the firm received from one S. G. Kaufman of Germany a bill of lading with a draft for the delivery upon payment of ninety-two bales of hides. Coughlin, on behalf of the firm, arranged with the plaintiff to furnish the money to pay the draft. Before the payment was made, Coughlin executed and delivered to the plaintiff the collateral promissory note of the firm for the amount of the draft. With the delivery of the note he also delivered a trust receipt of the firm, in the form set out in the bill.

At the time of Coughlin's death, the skins described in the trust receipt had either been sold or tanned into leather. The skins that remained unsold and the money received from those sold were so mixed with other skins and money of the firm as to render them not susceptible of separation and identification. The question is whether this fund (money and leather) should be awarded to the bank upon its claim under the trust receipt.

There are no facts found by the master to warrant a finding or inference of fact that the plaintiff purchased the hides of Kaufman on behalf of the firm, that it took title to itself as security for its advancement or that it received the bill of lading and draft as agent for the seller. The case at bar is, therefore, not within or governed by *Stollenwerck* v. *Thacher*, 115 Mass. 224, *Fifth National Bank of Chicago* v. *Bayley*, 115 Mass. 228, *Newcomb* v. *Boston & Lowell Railroad*, 115 Mass. 230, *Moors* v. *Wyman*, 146 Mass. 60, *Moors* v. *Bird*, 190 Mass. 400, *Roland M. Baker Co.* v. *Brown*, 214 Mass. 196.

With the payment of the draft the legal title to the hides passed from the seller to the firm. The trust receipt, before the passing of the title to the firm, was inoperative to vest any legal title in the plaintiff, or after the passing of title to the firm to deprive it of title. It could not operate as a pledge, because the plaintiff never had possession of the hides and because the firm had and retained possession to manage and use them as collateral security for its debt to the plaintiff. *Walker* v. *Staples*, 5 Allen, 34. *Thompson* v. *Dolliver*, 132 Mass. 103. *Copeland* v. *Barnes*, 147 Mass. 388. *Harding* v. *Eldridge*, 186 Mass. 39. *Gamson* v. *Pritchard*, 210 Mass. 296.

If the trust receipt was valid as a mortgage as between the plaintiff and the firm, it was nevertheless invalid as against the creditors of Coughlin's insolvent estate because it was not recorded, and because by the express terms of the statute "Unless the property mortgaged has been delivered to and retained by the mortgagee, the mortgage shall not be valid against a person other than the parties thereto." R. L. c. 198, § 1. *Goodrich* v. *Dore,* 194 Mass. 493. See *Harrison* v. *J. J. Warren Co.* 183 Mass. 123; *Wall* v. *Provident Institution for Savings,* 6 Allen, 320; *Parker* v. *Flagg,* 127 Mass. 28.

It follows that the decree must be reversed in so far as it establishes a trust upon the money and leather in the possession of the administratrix, and must be modified by striking out so much thereof as provides for the allowance to the defendant Mulholland of a credit arising from the payment to the plaintiff of the money and leather charged with a trust in the decree.

*Decree accordingly.*