HARTFORD ACCIDENT AND INDEMNITY COMPANY *vs.* FRANK J. CALLAHAN and claimants.

(Six other actions between the same parties.)

SAME *vs.* ARTHUR H. McLEARN, ALLAN G. BUTTRICK, special administrator, claimant.

(Nine other actions between the same parties.)

Middlesex.    January 8, 1930. — June 5, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Mortgage,* Of personal property. *Sale,* What constitutes, Conditional. *Trust Receipt. Executor and Administrator.*

A contract of conditional sale of an automobile by a dealer, and the purchaser's note accompanying it, were fictitious. There was no actual or intended sale and the automobile remained in the dealer's possession. The dealer secured an advance from a finance company, indorsed the note to it and assigned to it all his interest in the automobile and all "rights and remedies under said contract." Payments thereafter made to the finance company were in fact made by the dealer. The contract was not recorded in the manner required by G. L. c. 255, § 1, as amended by St. 1921, c. 233. The finance company acted in good faith and had no knowledge that the contract and note were fictitious. The dealer subsequently died insolvent. The finance company sought to replevy the automobile. The special administrator of the dealer's estate intervened as claimant to protect the rights of the creditors of the estate. *Held,* that

(1) The "assignment" of the fictitious contract to the plaintiff did

not constitute an outright sale of the automobile to the plaintiff; it constituted merely a transfer of title to it as security for the advance made to the dealer by it;

(2) Notwithstanding the form of the "assignment," it was in reality a mortgage of the automobile or a bill of sale given for security; and therefore was subject to the terms of said statute;

(3) The "assignment" was valid only as between the plaintiff and the dealer: the claimant was not a party thereto within the meaning of the statute;

(4) The "assignment" was not binding on the claimant, and, as between him and the plaintiff, he was entitled to the automobile.

The dealer above mentioned secured possession of another automobile in the following manner: the automobile was shipped by the manufacturer consigned to the dealer, and a bill of lading to his order and a draft on him were forwarded to a bank for collection. A distributor of automobiles, with whom the dealer had business relations, paid the draft at the bank and secured the bill of lading. The dealer thereupon signed and delivered to the distributor a blank check, a blank note and a blank form of an instrument called a "trust receipt" wherein the dealer acknowledged receipt of the automobile, agreed to hold it in trust for the distributor as the distributor's property and stipulated that it was intended "to preserve intact the Distributor's title" to the automobile for the note given "and any other indebtedness due from . . . [the dealer]. . . . said note and any sums delivered by . . . [him] shall be security for the performance of the things obligatory upon . . . [him] hereunder"; and that, if the note were not paid, "all notes due from . . . [him] to the Distributor shall immediately become due and payable." The bill of lading thereupon was delivered to the dealer, who secured possession of the automobile. The distributor filled out the check, note and "trust receipt," indorsed the note and delivered it with the other documents to the bank. The bank credited the distributor with the amount of the note and indorsed the note to the finance company. The whole transaction, by prearrangement, was for the ultimate purpose of permitting the dealer to borrow money for the payment of the automobile by means of credit given to him by the finance company. The "trust receipt" was not recorded in the manner required by G. L. c. 255, § 1, as amended by St. 1921, c. 233. The finance company also sought to replevy this automobile. The special administrator of the dealer's estate intervened as a claimant. *Held,* that

(1) The principle of law recognizing the validity of a trust receipt, whereby a banker having title to imported property entrusts the possession thereof to the importer to sell and retains title as security for advances made to the importer, is not to be extended to permit one having title to property to borrow money on an instrument called a "trust receipt" whereby he acknowledges that he holds his own property in trust for the lender;

(2) Under the bill of lading, title to the automobile passed from the manufacturer to the dealer, and the transaction amounted merely to the giving of security to the plaintiff, which had not had title to the automobile;

(3) In the circumstances, the "trust receipt" was not a legal trust receipt; it was in reality a mortgage of the automobile;.

(4) Since the "trust receipt" was not recorded as required by said statute, it was invalid as against persons other than the parties to it;

(5) The claimant was not a party to the "trust receipt" within the meaning of the statute and was entitled to the automobile as against the plaintiff.

SEVENTEEN ACTIONS OF REPLEVIN. Writ in the Third District Court of Eastern Middlesex in one action dated February 29, 1928, and in the other sixteen actions dated March 1, 1928.

Allan G. Buttrick, special administrator of the estate of Otto F. Morgan, late of Watertown, intervened as claimant in each action.

The actions were tried together in the District Court upon an agreed statement of facts. A provision of the "trust receipt," not stated in the opinion, was that Morgan acknowledged having received an automobile from the Distributor and agreed to hold it in trust for the Distributor as its property. Other material portions of the agreed statement of facts are stated in the opinion. The trial judge found for the claimant in each action, and reported the actions to the Appellate Division for the Northern District. The reports were ordered dismissed in sixteen of the actions; and in the other action the order was entered "Action of the trial court reversed; judgment for the plaintiff." The claimant appealed in the last action; and the plaintiff appealed in the other actions.

*K. C. Tiffin,* (*G. D. Shorey* with him,) for the plaintiff.

*D. Burstein,* (*V. C. Brink* with him,) for Buttrick, special administrator, intervenor.

CARROLL, J. These cases are a number of actions of replevin tried together in the Third District Court of Eastern Middlesex on an agreed statement of facts. In each case there was a finding for Allan G. Buttrick, the special administrator of the estate of Otto F. Morgan, deceased. In the Appellate Division the report was dismissed in all the cases except No. 933; in that case the action of the trial judge was reversed and judgment entered for the plaintiff. We will first consider the group of cases excluding No. 933.

In this group now under consideration the plaintiff appealed from the decision of the Appellate Division.   Mr. Buttrick intervened to protect the interests of the creditors of Otto F. Morgan, whose estate was insolvent.   The title of the plaintiff to the motor vehicles involved is based on dealings with Morgan, whereby Morgan would assign to the Hartford Accident & Indemnity Company an instrument purporting to be a conditional sale agreement between him and a third person.   The plaintiff, during the year 1928, was engaged in the business of financing purchases of motor vehicles.   Morgan during this period was a dealer in motor vehicles.   The business between Morgan and the plaintiff was carried on in substantially the manner following:  Morgan would submit to the plaintiff a conditional sale agreement and note upon which he would request an advance.   This note and agreement would purport to be signed by an apparent purchaser, the agreement showing the purchase price, the amount to be advanced, and the amount stated to have been already paid by the supposed purchaser.   These agreements did not represent actual sales.   After the death of Morgan it was discovered that all of the signers of the conditional sale agreements and notes signed at the request of Morgan without intending actual sales; that none of them received possession of the automobiles or paid anything; that Morgan made all the payments and the property remained either in his possession or in the warehouse.

The conditional sale agreement assigned by Morgan to the plaintiff recited that "the title to, ownership in, and right of possession of" the automobile are to remain in Morgan "until said indebtedness and all other sums of money payable to you" are repaid.   The assignment purports to assign to the plaintiff all of Morgan's interest in the property and all "rights and remedies under said contract."   The agreement between Morgan and the apparent purchaser was fictitious.   There never was at any time any actual or intended sale or change of possession.   Morgan continued to hold the property either in possession or in the warehouse.

The plaintiff contends that the transactions between Morgan and the plaintiff amounted to sales; that the assignments of the fictitious conditional sale contracts were bills of sale and an outright purchase by the plaintiff. This contention is not supported by the facts. As the conditional sales agreements were not genuine, Morgan owned the automobiles. When he assigned the agreements he transferred his title to the plaintiff, but he was not by these assignments divested of all interest in the property. He had a right of redemption and on payment of the notes would have full title. The title of the plaintiff was merely a title as security for the money advanced. The assignments were not of conditional sale contracts because there were no true conditional sales of the automobiles in question, and no conditional sale title was ever made. The entire transactions between the plaintiff and Morgan amounted to an agreement that while Morgan was to hold the property the plaintiff was to have security for its advances, and for this purpose was to have title to the vehicles. In reality the assignments were mortgages to secure the plaintiff. The transactions are not in the form of mortgages, but this is the true construction of the instruments no matter what was their form. *Worcester Morris Plan Co.* v. *Mader,* 236 Mass. 435. *Tripp* v. *National Shawmut Bank,* 263 Mass. 505. As the assignments were sales to secure the advances, they were mortgages. As they were not recorded as required by G. L. c. 255, § 1, as amended by St. 1921, c. 233, they were not valid except between the plaintiff and Morgan. This section of the statute, after reciting that a mortgage of personal property unless recorded shall not be valid against any party other than the parties thereto, specifically provides that the section shall apply to bills of sale given for security. The plaintiff apparently acted in good faith and had no knowledge that the agreements were spurious; but the recording statutes were passed to protect the rights of third parties. Morgan was in possession and no examination of the public records would disclose that he had given title to the plaintiff as security. See *Porter* v. *Stuart,* 203 Mass. 46.

Morgan remained liable on the agreements as well as on

the notes which he indorsed "with recourse," and also on the notes indorsed by him without recourse. Although the notes, as we understand the facts, purported to be signed by the parties as makers, they, at least so far as Morgan was concerned, were not real makers. All the notes were indorsed by Morgan and delivered by him to the plaintiff as genuine notes, and he was apparently authorized by the plaintiff to collect the sums due on the notes and to discharge the obligations, and "as the instalments . . . fell due, payments would be made by Morgan on a number of notes by a single check."

Mr. Buttrick, being the special administrator of the insolvent estate of Morgan, was not a party to the mortgage within the meaning of G. L. c. 255, § 1, as amended. That point is settled by *Peoples National Bank* v. *Mulholland,* 224 Mass. 448, 452, and cases cited. See *Haskell* v. *Merrill,* 179 Mass. 120. The title of the special administrator went back to the date of the death of Morgan. *Lawrence* v. *Wright,* 23 Pick. 128. The special administrator of the insolvent estate could recover for the benefit of the creditors of Morgan. In the cases we have been considering the order dismissing the report should be affirmed.

In the case which is docketed in the District Court as No. 933, the findings of the trial judge were reversed by the Appellate Division and judgment entered for the plaintiff. The intervenor appealed. In this case the plaintiff claims title by assignment of a so called trust receipt. The trust receipt was delivered under the circumstances shown in the statement of agreed facts. These circumstances were substantially as follows: The local distributor of a certain make of automobiles was The Henley-Kimball Company, a Massachusetts corporation. "When motor vehicles shipped by the manufacturer would arrive in Boston both the Henley-Kimball Company and Morgan" would be notified of the shipment "consigned to Morgan." A bill of lading to the order of Morgan, with draft on him, was sent to a bank in Boston for collection. When the automobiles arrived The Henley-Kimball Company would notify Morgan, with the request that he notify The Henley-Kimball Company "when

he would pay for the cars." "On the morning of the day upon which Morgan agreed to pick up the bill of lading" The Henley-Kimball Company would take up the "draft and bill of lading by paying the amount of it." Morgan would then call on The Henley-Kimball Company and offer to take the cars. When they were not paid for in cash by Morgan, he received the cars under an arrangement by which the plaintiff extended credit to him. This transaction was in effect as follows: When the cars arrived Morgan would sign a blank check, blank forms of "trust receipts," and blank forms of notes, leaving them with The Henley-Kimball Company; upon signing them, the bill of lading would be delivered to him. The checks, notes and trust receipts would then be filled out by The Henley-Kimball Company. This company would then indorse the notes to the bank where it had its account, and send to it the notes and "trust receipts." The bank would then indorse the notes to the plaintiff and credit The Henley-Kimball Company with the amount of the notes. When Morgan took possession of the cars he removed them to his place of business or to a public bonded warehouse. Morgan was authorized to transfer title to the automobiles. The provision in the "trust receipt" requiring written consent of the distributor to a sale "was not enforced."

The alleged "trust receipt" signed by Morgan did not operate as a legal trust receipt. The nature of a valid trust receipt is explained in *Peoples National Bank* v. *Mulholland*, 224 Mass. 448, *Peoples National Bank* v. *Mulholland*, 228 Mass. 152, and *T. D. Downing Co.* v. *Shawmut Corp. of Boston*, 245 Mass. 106. In *T. D. Downing Co.* v. *Shawmut Corp. of Boston*, it was said at page 112 that the banker advancing funds for merchandise imported "takes title directly to himself and retaining title in himself until the price of the merchandise is paid to him delivers possession to the importer or merchant in order that the latter may carry out his own commercial plans respecting the importation." The banker has the title and retains it, the merchant delivering to the banker a receipt that he (the merchant) holds the property in trust for the banker. The law

recognizing the validity of trust receipts in importations of merchandise should not in our opinion be extended so as to permit one who claims to be the owner to borrow money on a document called a trust receipt by which he acknowledges that he holds his own property in trust for his creditor. An importer may under a trust receipt give possession to another to hold the property, but in our opinion this does not validate the transaction here in question. *Peoples National Bank* v. *Mulholland*, 224 Mass. 448. *Simons* v. *Northeastern Finance Corp. ante*, 285. As we construe the statement of agreed facts, Morgan signed the so called "trust receipt" and notes; when this was done the bill of lading was delivered to him. At no time was the bill of lading indorsed. If Morgan had title to the automobile under the bill of lading, then he was using the form of a trust receipt to borrow money. The transaction was in reality a mortgage and as it was not recorded under G. L. c. 255, § 1, as amended, it was of no validity in so far as the rights of creditors were involved. It would seem, from the agreed statements, that the title passed from the manufacturer to Morgan; the bill of lading was to the order of Morgan and apparently the title passed directly from the shipper to Morgan. *Peoples National Bank* v. *Mulholland*, 228 Mass. 152.

Morgan was the consignee; the bill of lading was made to his order. The bank received the bill of lading and draft; it surrendered these documents to The Henley-Kimball Company and on signing the notes and the so called "trust receipt" in blank the bill of lading was delivered to Morgan; he then took possession of the automobile. After this was done The Henley-Kimball Company filled out the papers including the so called "trust receipt," and the "entire arrangement was carried on because of prearranged line of credit given by the plaintiff to Otto F. Morgan." It thus appears that the whole transaction including the receipt and delivery of the documents was for the ultimate purpose of permitting Morgan to borrow money for the payment of the motor vehicle by means of the credit given him by the plaintiff, the Hartford Accident & Indemnity Company.

The plan by which Morgan received credit had this end in view — that the plaintiff gave its credit to Morgan and he in return gave the so called "trust receipt" as security. Such a proceeding is contrary to the scope and purpose of a trust receipt; it purported to give title to the plaintiff when the plaintiff never before owned the automobile; it did not, as the banker in *T. D. Downing Co.* v. *Shawmut Corp. of Boston, supra,* own the property and entrust it to an importer to sell, the banker retaining title as security for his advances. Here the plaintiff's title came to it by assignment of the so called "trust receipt," Morgan being the maker and The Henley-Kimball Company the assignor. The only title given to the plaintiff was under and by virtue of the so called "trust receipt"; this being the aim of the transaction, the alleged "trust receipt" cannot operate as such. The transaction amounted to the giving of security to the plaintiff for the credit extended; the "trust receipt," as we have said, was in reality a mortgage and it was not recorded. Therefore, as Mr. Buttrick was not a party to the mortgage, it was not valid against him. G. L. c. 255, § 1. *Peoples National Bank* v. *Mulholland,* 224 Mass. 448, 452.

That the instrument called a "trust receipt" was not in law a genuine trust receipt is shown by its terms. It stipulates that it was the intention "to preserve intact the Distributor's title thereto" for the note given "and any other indebtedness due from us." ". . . said note and any sums delivered by us shall be security for the performance of the things obligatory upon us hereunder." If the note is not paid, "all notes due from us to the Distributor shall immediately become due and payable." By this agreement security was given the distributor not only for the indebtedness due on the particular note, but for other debts owed by Morgan to the distributor. Such an arrangement is not one contemplated or permitted by a valid trust receipt under the facts agreed to in this case. As the so called trust receipt was in law a mortgage, and as it was not recorded, it was not valid against the creditors of Morgan, and Mr. Buttrick, as the special administrator of the insolvent estate of Morgan, could recover.

It follows that in case No. 933 the order of the Appellate Division is reversed and judgment is to be entered for the intervenor. In cases Nos. 934, 935, 936, 937, 938, 939, 944, 945, 946, 947, 949, 950, 951, 953, 954, 956, the order dismissing the report is affirmed.

*So ordered.*