Rockingham,
June 29, 1933.

GENERAL MOTORS ACCEPTANCE CORPORATION

*v.*

RALPH BERRY *& a.*

*Tyler, Eames, Wright & Reynolds* and *William F. Byrne* (of Massachusetts) and *Willoughby A. Colby* (*Mr. Byrne* orally), for the plaintiff.

*George R. Scammon,* for the defendants.

MARBLE, J.   The life of the doctrine of the trust receipt has been characterized as a short but adventurous one.   36 Harv. Law Rev. 229.

Professor Williston in the second edition of his work on Sales, published in 1924, says (*p.* 797): "It seems probable that if the practice of permitting validity to unrecorded liens by way of trust receipts is to continue, limits must be fixed either judicially or by statute to the kinds of transactions in which such receipts may be used.   At present the question has not been fully considered how far public policy should permit such a secret title to prevail over general creditors if these trust receipts come into general use in domestic as well as foreign business, but the question is likely before many years to be forced upon the attention of courts.   In the automobile business, the trust receipt is, it seems, already coming into general use."

Since these words were written, resort to this method of financing has become so general that in 1931 it was estimated that the total number of trust receipts in the United States amounted to several hundred thousand annually and represented a value considerably in excess of a billion dollars.   19 Cal. Law Rev. 273.

This particular form of commercial instrument (which has nothing whatever to do with trusts, technically so called) has been variously held to constitute a chattel mortgage, a conditional sale, a bailment or pledge, and "an independent type of security device, not falling within any of the established categories, the borrower having the beneficial interest in the goods, and the lender having a security title derived not from the borrower himself, but from a third person."   44 Harv. Law Rev. 304.   Many authorities have deemed this latter circumstance of controlling importance.   2 Collier, Bankruptcy (13th *ed.*), *p.* 1527.

Since, however, "the principal purpose of the users of trust receipts in distinguishing their device from the chattel mortgage is to get away from the recording requirements" (19 Cal. Law Rev. 273), courts are more and more inclined to look beyond the form to the real nature of the specific transaction. *In re Bettman-Johnson Co.*, 250 Fed. Rep. 657, 664; 15 Cornell Law Quarterly, 567, 568.

"Trust receipt is an expression that was first given general currency in transactions involving the importation of goods. In the importing transactions it contemplates a tri-partite arrangement—seller, bank and buyer. The seller tranfers ownership to the bank. The bank transfers possession to the buyer. The bank keeps its ownership to secure certain obligations of the buyer. The conventional doctrine is that this is a novel and distinct security device and that it is valid without filing or record." Hanna, "Trust Receipts," 29 Columbia Law Rev., 545. See Vold, "Trust Receipt Security in Financing of Sales," 15 Cornell Law Quarterly, 543.

Cases on the subject are collected in 25 A. L. R. 332; 31 A. L. R. 937; 49 A. L. R. 282; A. L. R. Blue Book of Supplementary Decisions, 1932, *p.* 544.

Professor Hanna believes that the fundamental idea in the importing and automobile cases is one of pledge. 29 Columbia Law Rev., 550. But "The surrender of goods by a pledgee to a pledgor is said to destroy the pledge unless the entrusting is for a special or temporary purpose." 1 Williston, Sales (2d *ed.*), *p.* 794. See, also, *Danforth* v. *Denny*, 25 N. H. 155, 167; *Walcott* v. *Keith*, 22 N. H. 196, 209; *Colby* v. *Cressy*, 5 N. H. 237, 239.

Says Karl T. Frederick: "The arrangement does not constitute a pledge. The security of a pledge depends entirely upon possession in the party secured. When possession is lost, the security is lost. The title in the case of a pledge is assumed to be in the pledgor or at least in another than the pledgee. This is exactly contrary to the trust receipt situation, where the title is intended to remain in the party secured while possession is entrusted to another who has a certain interest . . . in the property." 22 Columbia Law Rev., 399. And Professor Hanna himself concedes that "in many jurisdictions, it is perhaps too late to work out a trust receipt doctrine within the bounds of the law of pledges." 19 Cal. Law Rev., 280.

Where, as here, the dealer is under no obligation to account for the proceeds of the property when sold, but executes a promissory note for the purchase price, the transaction does not constitute a consignment. *Eaton* v. *Welton*, 32 N. H. 352, 357.

Neither does it amount to a conditional sale in the strict sense of the term. "The finance company," says Professor Hanna, "is simply not a seller. The holder of the trust receipt has only a limited security interest in the goods. The holder of a trust receipt is assumed to be able to reclaim the goods at any time, while the conditional seller must await a default." 19 Cal. Law Rev., 268. See also *Simons* v. *Company*, 271 Mass. 285, 290. (The close distinctions drawn by many courts between a conditional sale and a chattel mortgage are unimportant so far as the present controversy is concerned, since record is essential in either case. P. L., c. 216, ss. 2, 27. See *Commonwealth Finance Corp.* v. *Schutt*, 97 N. J. Law, 225, 228.)

We are of the opinion, however, that the situation presents all the essential elements of a chattel mortgage. To be sure, in the case of the ordinary mortgage the security title is transferred from debtor to creditor. But the transaction is no less a mortgage if the security is transferred to the creditor by a third person. 1 Jones, Mortgages (8th *ed.*), s. 405, and cases cited; 19 Cal. Law Rev., 268; 22 Columbia Law Rev. 402.

The rule is elementary that the intention of the parties is to be gathered from the various instruments, construed together (*Hill* v. *Huntress*, 43 N. H. 480, 483) in the light of the surrounding circumstances (*Weston* v. *Ball*, 80 N. H. 275, 276, 277, and cases cited).

In the present case, the sales company applied to Wentworth, the seller, for the automobiles in question, paying him one-tenth of the purchase price and signing a promissory note for the balance, payable to the plaintiff. The sales company was engaged in retailing cars and is designated in both note and receipt as a dealer. The cars were obtained for exhibition and sale. The sales company assumed the risk of all loss or injury to the cars, and agreed to pay all taxes, encumbrances and claims relative thereto. By the terms of a document entitled "Instructions to Dealer," provision is made for the release of specific cars upon payment of stipulated amounts to be applied in reduction of the amount due on the dealer's promissory note.

The only logical inference to be drawn from these facts is that the title which Wentworth conveyed to the plaintiff, at the sales company's implied request, was for the purpose of security only, and that the sales company bought and received a beneficial interest in the cars.

Nor is this result in conflict with *Lord* v. *Ferguson*, 9 N. H. 380. For while it is there held that a transfer by an absolute bill of sale will not constitute a mortgage, though intended as security only, it

is expressly stated in the opinion (*p.* 383) that "Nothing appears in the transaction to give it in any manner the character of a mortgage."

"In substance," Professor Williston asserts, "the [trust receipt] transaction is a mortgage, and the only excuse for not requiring record can be that, on a balance of conveniences, it is more important to have a form of business necessary for commerce proceed unhampered than it is to protect such persons as may be deceived by the apparent ownership of those to whom bankers have entrusted goods upon which they hold security. This excuse is no better and no worse when the bill of lading runs directly to the banker's order than when it is merely endorsed to him." 34 Harv. Law Rev., 759, 760.

It is unnecessary to decide at this time whether there is a valid distinction between the usual arrangement for purchasing imported merchandise and the trust-receipt plan of marketing automobiles. See *Simons* v. *Company,* 271 Mass. 285, 288; *Hartford Accident &c. Co.* v. *Callahan,* 271 Mass. 556, 563; Annotation, 49 A. L. R. 309. It may be that in the case of imports the possession of the importer under the trust receipt is for so "specific and limited" a purpose "both in scope and time" as to justify a special rule. *Clark* v. *Flynn,* 199 N. Y. Supp. 583, 587. Such is not the situation here.

The terms of our statute are general. Personal property is subject to mortgage, and unless possession of the mortgaged property is retained by the mortgagee the instrument must contain the requisite affidavit and be recorded. P. L., c. 216, s. 2. It "is conceded by the authorities that the only real ground of the so-called trust receipt doctrine is commercial necessity." *In re Lee,* 6 A. B. R. (N. S.) 437, 446. If exceptions are to be made on that ground, it is for the legislature to make them.

Assuming that the sales company was insolvent on the date of the bank's attachment, the bank, as against the trustee in bankruptcy, has no interest in the present proceedings, since the attachment was made within four months of the date of the filing of the petition. 7 C. J. 195-197.

The trust receipt was valid between the parties thereto without affidavit or record. *Patten* v. *Moore,* 32 N. H. 382, 387. Consequently, the taking of the cars by the plaintiff did not constitute a voidable preference. 4 Remington, Bankruptcy (3d *ed.*), s. 1636.

Counsel for the plaintiff correctly contend that since the automobiles were never in the custody of the bankruptcy court, the trustee was vested, under section 47a, *cl.* 2, of the bankruptcy act, merely with the rights of a judgment creditor holding an execution returned

unsatisfied (4 Remington, Bankruptcy (3d *ed.,*) *p.* 302), and that the taking of the property by the plaintiff before the bankruptcy petition was filed cured the lack of affidavit and record (*Ib.*, *p.* 321). See *Clark* v. *Tarbell*, 57 N. H. 328, 333.

Under section 67f, however, the trustee would be entitled, upon proper order of the bankruptcy court, to enforce for the benefit of the estate, the lien of the bank's attachment, which would ordinarily be dissolved. 7 C. J. 201, *s.* 305, and cases cited. Assuming that such an order has been made, or can now be made (*Duffy* v. *Charak*, 236 U. S. 97, 100), the issue of notice is a material one.

If the testimony contained in the deposition of Albert Sands is true, the bank through the cashier "in charge of its business" (*Wheeler* v. *Railway*, 70 N. H. 607, 615) had definite and detailed knowledge of the plaintiff's title to the property attached. Such knowledge would as between the bank (or the trustee who succeeds to the rights of the bank) and the plaintiff take the case out of the operation of the statute. *Piper* v. *Hilliard*, 58 N. H. 198, 199; *Batchelder* v. *Sanborn*, 66 N. H. 192, 193.

The agreed facts "together with the testimony of Albert Sands" are said to be "all the facts necessary for a determination of the rights of the parties." While the fact of notice has neither been found nor agreed to, the testimony tends only to sustain the contentions of the plaintiff, and the parties are apparently content to have their rights disposed of on that basis. *Nashua Trust Co.* v. *Burke*, 84 N. H. 490, 491. The defendants have filed no brief.

The automobiles were situated in this state and the parties intended them to remain here. The bills of sale, trust receipts and promissory notes were all executed in this jurisdiction. No question of the conflict of laws is therefore raised. *Lathe* v. *Schoff*, 60 N. H. 34.

On these facts, the order must be

*Judgment for the plaintiff.*

All concurred.