### In re McMANUS MOTORS, Inc.
### No. 59956.

District Court, D. Massachusetts.
March 29, 1939.

114

Albert G. Tierney and Martin Witte, both of Boston, Mass., for trustee in bankruptcy.

Charles F. Lovejoy, of Boston, Mass., for Associates Discount Co.

SWEENEY, District Judge.

The correctness of the "Referee's Findings and Order" entered May 12, 1938, is here involved.

The Associates Discount Company, hereinafter called Associates, filed a petition to enforce a personal property mortgage covering the bankrupt's property. After hearing, the referee ruled (1) that the mortgage in question was void: (2) that payments made by the bankrupt to Associates subsequent to the date of the mortgage amounting to $34,595.53 should be repaid to the bankrupt's estate; (3) that the claim of Associates should not be allowed until a repayment of the sum mentioned above had been made.

In the original petition for review, Associates made no complaint about the ruling that the mortgage was void, but after the case had been resubmitted to the referee to take additional evidence, a new claim of review was filed in which, for the first time, Associates directly attacked the ruling with regard to the mortgage. Waiving the question of the timeliness of Associates appeal, I am of the opinion that there was no error in the first ruling.

Regardless of who initiated the scheme to cover the bankrupt's property with a blanket mortgage, or what the understanding of Associates may have been as to the legal effect of the mortgage, there was ample evidence before the referee to justify his finding and conclusion that the taking of the mortgage would operate to create a legal preference in its favor.

Prior to the execution of the mortgage, Associates had been loaning money to the bankrupt on so-called trust certificates and conditional bills of sale. It had been exercising the right accorded to it of examining the bankrupt's books every two weeks. At the time of the execution of the mortgage, and while negotiations for it were in effect, Associates had definite knowledge of the following conditions of the bankrupt's estate: first, that the bankrupt was behind in all of its due payments to Associates; second, that a check issued by the bankrupt to Associates had been returned because not covered by sufficient funds; and, third, that attachments had been filed against the bank account of the bankrupt.

So much for the actual knowledge that Associates had prior to the execution of the blanket mortgage, all of which would be a basis for the finding that the mortgage was void. Looking to the mortgage itself, it is significant that when first negotiated it was to be in the amount of $3,000. At that time the bankrupt was overdue in its payments to Associates in the sum of $2,999. Before the mortgage was actually executed, it was increased by $1,000 so that the bankrupt

actually received $1,001 in cash, and Associates took the balance to pay itself the overdue account. There is nothing in the record to indicate that Associates ever discharged whatever liens it might have claimed by reason of the trust certificates and conditional bills of sale, but it is assumed that it did not press them, having received payment in cash. At the time that the $4,000 mortgage was given, while, of course, it secured nothing but the debt of $4,000, it is significant that the collateral security for the $4,000 debt was worth well over $8,000. If, as Associates would have it appear, it was the bankrupt who was pressing for the mortgage, it seems unusual that the bankrupt should offer collateral security worth twice the amount of the indebtedness, and then personally indorse the notes. When the bankrupt filed its petition about two and one-half months later, it is to be noted that there were unsecured debts of approximately $30,000. Taking the whole picture as developed by the evidence before the referee, I am of the opinion that he was fully justified in finding that the mortgage was void as a preference under the Bankruptcy Act.

█ September 25, 1936, appears to be the first date when Associates had knowledge of the insolvency of the bankrupt so that payments received by it after that date would create a preference under the Bankruptcy Act. Examining payments made after that date, it appears that $9,657.83 was paid by the bankrupt to Associates after September 25, 1936, on trust receipts that were executed before August 9, 1936, the day when the Uniform Trust Receipts Act became effective in Massachusetts, St. 1936, c. 264. These trust receipts were not recorded even as chattel mortgages under Hartford Accident and Indemnity Co. v. Callahan, 271 Mass. 556, 171 N.E. 820, nor was any notice given to the other creditors of the liens claimed by such trust receipts. In the Callahan case, it was held that trust receipts prior to the adoption of the Uniform Trust Receipts Act were in effect nothing more than unrecorded chattel mortgages. Some criticism of the Callahan case was made later in Handy v. C. I. T. Corporation, 291 Mass. 157, 197 N.E. 64, 101 A.L.R. 447, but nothing in that decision operates to detract from the decision in the Callahan case, the Handy decision being based on a relationship of agency and the doctrine of estoppel. While the transactions here complained of might have been binding on the bankrupt under the estoppel theory, I am of the opinion that the Callahan case controls as to the legal effect of the instruments under which the preferred claims were made and such preferment does not exist. The trustee is therefore entitled to receive the sum of $9,657.83 from Associates.

█ Trust receipts executed after August 9, 1936, appeared to fall into two classifications: Those paid or redeemed within thirty days, and those remaining unpaid after the thirty-day period had expired. In the first classification, there were payments received by Associates in the amount of $14,378.42, and redemptions or repossessions amounting to $2,736.63. These payments and redemptions I consider to be valid in the hands of Associates, and no recovery thereon should be had by the trustee. As to the second classification, those trust certificates that were not paid within thirty days or redeemed within that time run directly afoul the Massachusetts Trust Receipts Act, and are of no effect as a lien after the thirty-day period expired. This money could be recovered by the trustee from Associates were it not for the fact that a review of the daily transactions between the parties discloses that such advancements made by Associates over and above the $9,657.83 already passed upon were in the nature of repetitious loans made that did not serve to swell the aggregate of the new money advanced by Associates. After September 25, 1936, there were but two trust receipt transactions entered into which did not result in payment within thirty days under the Trust Receipts Act. Of the two advances that were thus made, they were merely reloans of the moneys paid back just prior thereto by the trustee to Associates.

The referee's report is confirmed as to the first and third rulings. The second ruling is confirmed to the extent of the $9,657.83. As to an excess above that figure the report is not confirmed.